IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| REBA PAUL, Personal Representative of the ESTATE OF DENTON E. LOUDERMILL, JR., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 2:25-CV-04031-WJE |
| RICHARD RAY BRATTIN, | ) ) |
| Defendant. | ) ) |

# ORDER

Pending before the Court is Defendant Richard Ray Brattin's Motion to Dismiss Plaintiff Reba Paul's First Amended Complaint.[1] (Doc. 23). Ms. Paul has filed suggestions in opposition to the motion (Doc. 27), to which Mr. Brattin has filed a reply (Doc. 28). This matter is now ripe for consideration. For the reasons that follow, Mr. Brattin's Motion to Dismiss will be DENIED.

## I. Background

On February 14, 2024, a mass shooting occurred near Union Station in Kansas City, Missouri, resulting in one fatality and injuries to approximately two dozen individuals. The incident took place as thousands assembled to celebrate the Kansas City Chiefs' Super Bowl LVIII victory over the San Francisco 49ers, by a score of 25-22 in overtime. (Doc. 18 ¶ 9). Mr. Denton E. Loudermill, Jr. attended the parade, which marked the Chiefs' third Super Bowl title in five years and their second consecutive championship. (*Id.* ¶ 10). He heard gunfire and attempted to move to a place of safety. (*Id.* ¶ 13). In the course of his departure, law enforcement officers

---

[1] With the consent of the parties, this case was assigned to the Chief United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(c).

stopped Mr. Loudermill, informed him that he was moving "too slow," placed him in handcuffs, and directed him to sit on a street curb. (*Id.* ¶¶ 15-16). While Mr. Loudermill sat handcuffed, bystanders took photographs of him which were subsequently disseminated on the social media platform X, formerly known as Twitter. (*Id.* ¶¶ 16-17, 20). Mr. Loudermill was later released without criminal charges. (*Id.* ¶ 18). Plaintiff asserts that Mr. Loudermill had no connection to, or involvement in, the shooting. (*Id.* ¶ 19).

On or about February 15, 2024, Mr. Richard Brattin, a Missouri State Senator, reposted an X post originally authored by Deep Truth Intel. (*Id.* ¶ 20; Doc. 23 at 7). The post featured a photo of Mr. Loudermill handcuffed on the curb and stated, "The Kansas City Chiefs Super Bowl Parade shooter has been identified as 44-year-old Sahil Omar, an illegal immigrant." (Doc. 18 ¶ 20; Doc. 23 at 7). Mr. Brattin's repost added "@POTUS CLOSE THE BORDER." (Doc. 18 ¶ 21; Doc. 23 at 7). Contrary to Mr. Brattin's post, Mr. Loudermill was not an illegal immigrant or connected to the shooting. (Doc. 18 ¶ 25).

## II. Discussion

Unrelated to the tragic shooting at the Kansas City Chiefs victory parade, Mr. Loudermill passed away on April 11, 2025. (Doc. 7). On August 21, 2025, Ms. Paul, Personal Representative of the Estate of Denton E. Loudermill, Jr., was substituted as Plaintiff and filed the Amended Complaint alleging false light invasion of privacy on Mr. Loudermill's behalf. (Docs. 17, 18). On September 4, 2025, Mr. Brattin filed the instant Motion to Dismiss alleging that the Amended Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6), and that the Court lacks subject matter jurisdiction over Ms. Paul's claim. (*See* Doc. 23). Ms. Paul filed an opposition to the Motion to Dismiss on September 18, 2025, arguing that a factual dispute was properly raised and the case should proceed. (*See* Doc. 27). Mr. Brattin filed a reply reasserting the arguments

raised in the Motion to Dismiss on October 2, 2025. (*See* Doc. 28). For the reasons that follow, the Court finds that Ms. Paul has adequately stated a claim upon which relief can be granted and that it has subject matter jurisdiction over Ms. Paul's claim.

   A. Legal Standard

The Court may dismiss a complaint for "fail[ing] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint survives a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. The factual allegations "do not need to be 'detailed,' but they must be 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *In re SuperValu, Inc.*, 925 F.3d 955, 962 (8th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). Specifically, the standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Determining whether a claim is plausible is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Hamilton v. Palm*, 621 F.3d 816, 818 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). However, the Court must "accept the factual allegations in the complaint as true and draw all reasonable inferences in the nonmovant's favor." *Cook v. George's, Inc.*, 952 F.3d 935, 938 (8th Cir. 2020) (citing *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir.

2010)).

Additionally, in ruling on a 12(b)(6) motion to dismiss, the Court is not limited to the four corners of the complaint. *Outdoor Cent., Inc. v. GreatLodge.com, Inc.*, 643 F.3d 1115, 1120 (8th Cir. 2011). The court may consider "materials that are part of the public record or do not contradict the complaint, and materials that are 'necessarily embraced by the pleadings.'" *Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 955 (8th Cir. 2020) (citing *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

With respect to this Court's authority, "[f]ederal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Federal courts retain the power to hear cases only if authorized to do so by both the Constitution and by statute. *Id*. A court deciding a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) must distinguish between a "facial attack" and a "factual attack" on jurisdiction. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016). In a facial attack, the court considers only the face of the pleadings and the non-movant "receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* When a factual attack is brought, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of the safeguards placed by Federal Rule of Civil Procedure 12(b)(6). *Id.* This means that matters outside the pleadings, "such as testimony and affidavits," are considered, and "the nonmoving party [does] not enjoy the benefit of the allegations in its pleadings being accepted as true." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 915 (8th Cir. 2015). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Garret v. Fallon*, 772 F. App'x 376, 377 (8th Cir. 2019).

**B. Ms. Paul states a valid claim that is factually plausible and is not barred by the Communications Decency Act.**

Mr. Brattin argues that Ms. Paul's has failed to state a claim on which relief can be granted because he is entitled to immunity under the Communications Decency Act ("CDA"). (*See* Doc. 23 at 8-17). Ms. Paul argues that Mr. Brattin was an "information content provider" under the CDA because he wrote the post at issue and is therefore not protected from liability. (Doc. 27 at 10-11). The Court finds that Mr. Brattin was an "information content provider" as to his post and is not immune under the CDA.

The Communications Decency Act states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." *Johnson v. Arden*, 614 F.3d 785, 790 (8th Cir. 2010) (*citing* 47 U.S.C. § 230(c)(1)). The CDA defines an "interactive computer service" as any "information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." 47 U.S.C. § 230(f)(3). An "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3). Information content providers are not immune for their own posts online under § 230. *See* 47 U.S.C. § 230(c); *Jones v. Dirty World Ent. Recordings LLC*, 755 F.3d 398, 409 (6th Cir. 2014) ("[A] defendant is not entitled to protection from claims based on the publication of information if the defendant is 'responsible, in whole or in part, for the creation or development of [the] information.'"); *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779-80 (8th Cir. 2012) (holding that because the plaintiffs' own posts contributed to the harm at issue, the CDA provided no immunity); *S.C. v. Dirty World, LLC*, No. 11-CV-00392-DW, 2012 WL 3335284, at *3 (W.D. Mo. Mar. 12, 2012)

(emphasizing that the issue is whether the defendant is responsible, in whole or in part, for the creation or development of the particular postings relating to the plaintiff that are the subject of the lawsuit).

The Amended Complaint alleges that Mr. Brattin is the author of the post at issue in this case. (Doc. 18 ¶ 21). It appears from the face of the Amended Complaint that Mr. Brattin is responsible for the words of his own post, which read, "@POTUS CLOSE THE BORDER" and appear next to an image of Mr. Loudermill. (Doc. 18 ¶¶ 20-21). An information content provider is one who is responsible, in whole or in part, for the creation or development of information provided through the Internet. 47 U.S.C. § 230(f)(3). Accordingly, Mr. Brattin is an information content provider as to his post. Mr. Brattin is not entitled to immunity under the CDA for his own post. *S.J.W.*, 696 F.3d at 779-80; *Jones*, 755 F.3d at 409 ("[A] defendant is not entitled to protection from claims based on the publication of information if the defendant is 'responsible, in whole or in part, for the creation or development of [the] information.'").

Mr. Brattin suggests that Ms. Paul seeks to hold him liable for information provided entirely by Deep Truth Intel. (Doc. 23 at 8). He notes that doing so is barred by the CDA. *Johnson*, 614 F.3d at 790-91. Mr. Brattin seeks to characterize his words on X as a "comment" on the Deep Truth Intel post. (Doc. 23 at 7; Doc. 28 at 2-4).

Whether Mr. Brattin's words on X constitute a "post" or a "comment" is a factual question. At this point in the litigation, all the factual allegations in Ms. Paul's Amended Complaint are accepted as true, and reasonable inferences drawn in her favor. *Cook*, 952 F.3d at 938. On its face, Ms. Paul's Amended Complaint pleads that Mr. Brattin created his own unique X post which incorporated the Deep Truth Intel post. (Doc. 18 ¶ 21). The Amended Complaint contains a screenshot of only Mr. Brattin's X post. (*Id.*). The Amended Complaint alleges that Mr. Brattin's

words, which call on the President of the United States to "close the border," next to the image of Mr. Loudermill handcuffed on the curb, cast Mr. Loudermill in a false light because Mr. Loudermill never illegally crossed the border and was not associated with the shooting that took place in Kansas City on February 14, 2024. (*Id.*).

Mr. Brattin argues that the words that provide the basis for the false light claim, namely "illegal immigrant" and "shooter" do not appear in his post, and therefore Ms. Paul's false light claim is implausible. (Doc. 23 at 12). Ms. Paul argues in response that Mr. Brattin's repost incorporated the Deep Truth Intel post and changed it into a unique digital entity of its own, and that he is responsible for the development of the post. (Doc. 27 at 11).

The issue of CDA immunity turns on whether a defendant is "responsible, in whole or in part, for the creation or development of the particular postings relating to [the] plaintiff that are the subject of [the] lawsuit." *Dirty World*, 2012 WL 3335284, at *4 (citing *Whitney Info. Network, Inc. v. Xcentric Ventures, LLC*, 2008 WL 450095, at *12 (M.D. Fla. Feb. 15, 2008)). "This is a broad definition, covering even those who are responsible for the development of content only in part. . . . [T]here may be several information content providers with respect to a single item of information (each being 'responsible,' at least 'in part,' for its 'creation or development')." *F.T.C. v. Accusearch Inc.*, 570 F.3d 1187, 1197 (10th Cir. 2009) (citing *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 419 (1st Cir. 2007)). The word "development" is not defined in the CDA, though many courts have taken it to mean that a website or information content provider "helps to develop unlawful content . . . if it contributes materially to the alleged illegality of the conduct." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1168 (9th Cir. 2008) (articulating material contribution test); *see Accusearch*, 570 F.3d at 1200 (adopting the material contribution test); *Jones*, 755 F.3d at 413 (same); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com,*

*Inc.*, 591 F.3d 250, 257-58 (4th Cir. 2009) (same). The Eighth Circuit has not yet spoken on the issue.

Ms. Paul argues in her response that Mr. Brattin's post contributed to the development of the Deep Truth Intel post. (Doc. 27 at 10). She concedes that the words "illegal immigrant" and "shooter" were not written by Mr. Brattin. (*Id.*). However, the Amended Complaint alleges that the words "close the border" next to the picture of Mr. Loudermill, who never crossed the border illegally, in handcuffs created the false impression that Mr. Loudermill was an illegal immigrant. (Doc. 18 ¶ 23). Applying the material contribution test is therefore unnecessary, as Ms. Paul has alleged that Mr. Brattin's post itself cast Mr. Loudermill in a false light and does not seek to hold him liable for the Deep Truth Intel post.

Mr. Brattin cites *Jones v. Dirty World Entertainment Recordings LLC* to support his argument that Ms. Paul seeks to hold him liable for information provided entirely by a third party. (Doc. 23 at 16). In *Jones*, the Sixth Circuit held that the owner and operator of a gossip website was not liable for allegedly defamatory statements made by third parties just because he commented on them. 755 F.3d 398, 415-16 (6th Cir. 2014). However, the plaintiff in *Jones* did not allege the comment that the defendant posted was defamatory in nature, but rather that his comment contributed to the development of defamatory posts made by third parties. *Id.* at 416. Had the plaintiff attempted to recover from the persons who authored the defamatory posts that the website published, rather than the website itself, the case may have been resolved differently. *See id.* at 417. Unlike the plaintiff in *Jones*, Ms. Paul has alleged that Mr. Brattin's post caused her harm, namely, that it portrayed Mr. Loudermill in a false light. (Doc. 18 ¶¶ 20-23).

CDA immunity in this case turns on whether Mr. Brattin is responsible in whole or in part for the creation or development of the particular post relating to Mr. Loudermill that is the subject

of the lawsuit. *See Dirty World*, 2012 WL 3335284, at *4. The Amended Complaint alleges that Mr. Brattin created the post at issue by writing "@POTUS CLOSE THE BORDER" on X. (Doc. 18 ¶ 21). It contains only a screenshot of Mr. Brattin's post. (*Id.*). It alleges that Mr. Brattin posted "false content provided in part by Deep Truth Intel." (*Id.* ¶ 22). Both Mr. Brattin and the Deep Truth Intel account appear to be responsible in part for the creation and development of Mr. Brattin's entire post. *See Accusearch*, 570 F.3d at 1197 ("[T]here may be several information content providers with respect to a single item of information (each being 'responsible,' at least 'in part,' for its 'creation or development')."). Therefore, Mr. Brattin is responsible at least in part for the creation or development of the particular post relating to Mr. Loudermill at the heart of this lawsuit.

Taking all of Ms. Paul's allegations as true and drawing reasonable inferences in her favor, this Court finds that Mr. Brattin created his own X post for which Ms. Paul seeks to hold him liable. There are no allegations about the content of the Deep Truth Intel post, only Mr. Brattin's. (*See* Doc. 18). The face of the Amended Complaint does not seek to hold Mr. Brattin liable for the Deep Truth Intel post. Ms. Paul's false light claim is plausible on its face. *Glick*, 944 F.3d at 717. Mr. Brattin is not entitled to immunity under the CDA for his own post. Therefore, the Court finds that Ms. Paul has sufficiently stated a claim on which relief can be granted.

**C. This Court has subject matter jurisdiction over Ms. Paul's claim.**

Mr. Brattin argues in the alternative that the Court must dismiss this action under Federal Rule of Civil Procedure 12(b)(1) because it lacks subject matter jurisdiction over Ms. Paul's claim. Mr. Brattin points to the doctrine of legislative immunity as barring Ms. Paul's attempt to hold Mr. Brattin, a Missouri State Senator, liable for statements that were made in the sphere of legislative activity. (Doc. 23 at 18). Ms. Paul argues that Mr. Brattin was acting in his capacity as a private

citizen and therefore legislative immunity does not apply. (Doc. 27 at 17-18). The Court finds that Mr. Brattin is not protected from suit in this case by the doctrine of legislative immunity.

First, this challenge to the Court's jurisdiction is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen*, 833 F.3d at 908. A facial attack is restricted to the pleadings, all facts alleged by the non-movant are taken as true, and all inferences are construed in favor of the non-moving party. *Id.* In a factual attack, evidence outside the pleadings is considered, and the non-movant does not have the same safeguards. *Id.*

Because Mr. Brattin has not introduced any evidence outside of the pleadings to convert this challenge to a factual attack, this Court will consider the motion a facial attack on its jurisdiction. Therefore, all facts alleged in Ms. Paul's Amended Complaint will be taken as true, and reasonable inferences made in her favor.

Next, Mr. Brattin argues that his post on X "constituted advocacy, by a Missouri legislator, for particular policy positions affecting the People of the State of Missouri," directed at the President of the United States. (Doc. 23 at 20). Ms. Paul argues that Mr. Brattin was acting in his individual capacity and not in his official capacity as a legislator when he made the X post at issue. (Doc. 27 at 17). This Court finds that Mr. Brattin's post is not a legislative act, and he is not protected by legislative immunity.

State and local legislators are entitled to absolute immunity from civil liability for their legislative activities. *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998); *Church v. Missouri*, 913 F.3d 736, 751 (8th Cir. 2019). This immunity arises from the Speech or Debate Clause in the United States Constitution. *Gravel v. United States*, 408 U.S. 606, 625 (1972); U.S. Const. art. I, § 6, cl. 1. To be protected, acts other than speech or debate within a legislative body must be legislative in

nature; that is, they must constitute an "integral part of the deliberative and communicative process by which [legislators] participate in . . . the consideration and passage or rejection of proposed legislation." *Gravel*, 408 U.S. at 625. An act is not legislative just because it is performed by a legislator. *Id.* ("That Senators generally perform certain acts in their official capacity as Senators does not necessarily make all such acts legislative in nature."). Rather, "immunity analysis focuses on 'the nature of the function performed, not the identity of the actor who performed it.'" *Brown v. Griesenauer*, 970 F.2d 431, 437 (8th Cir. 2010) (citing *Forrester v. White*, 448 U.S. 219, 229 (1988)). An act is legislative if it is an integral step in the legislative process. *See Bogan*, 523 U.S. at 55. For example, press releases and newsletters released by legislators are not protected by the Speech or Debate Clause. *Hutchinson v. Proxmire*, 443 U.S. 111, 133 (1979). Newsletters and press releases "are primarily means of informing those outside the legislative forum; they represent the views and will of a single Member." *Green v. DeCamp*, 612 F.2d 368, 372 (8th Cir. 1980) (citing *Hutchinson*, 443 U.S. at 133). A legislator's act to inform the public "is not part of the legislative function or the deliberations that make up the legislative process." *Id.* Additionally, legislators' conduct in seeking to influence another branch of government, though commonly done, "is not protected legislative activity." *Doe v. McMillan*, 412 U.S. 306, 313 (1973).

      Mr. Brattin's post informed the public and the President of the United States of his position on various issues affecting Missourians. (Doc. 23 at 20). Mr. Brattin's post was not made as part of a speech or debate on the Missouri Senate floor. *See Gravel*, 408 U.S. at 625 ("The heart of the [Speech or Debate] Clause is speech or debate in either House."). Mr. Brattin's post was not an "integral part of the deliberative and communicative process by which [legislators] participate in . . . the consideration and passage or rejection of proposed legislation." *See id.* The subject of Mr. Brattin's post was not pending legislation. If anything, Mr. Brattin's post was more akin to a

press release or newsletter directed at informing the public of the views of a single member of the legislature. *See Attwood v. Clemons*, 818 F. App'x 863, 870 (11th Cir. 2020) (holding that legislators' social media posts are similar to press releases or newsletters and are not protected by the Speech or Debate clause); *Hutchinson*, 443 U.S. at 133 (holding that press releases and newsletters from legislators are not protected by the Speech or Debate clause). Informing the public is not part of the legislative function or deliberations that make up the legislative process. *Green*, 612 F.2d at 372. Mr. Brattin's status as a legislator does not automatically make his acts "legislative" in nature. *See Brown*, 970 F.2d at 437. Directing his post at the President of the United States does not make it a legislative act. *McMillan*, 412 U.S. at 313 (legislators' conduct seeking to influence the Executive Branch "is not protected legislative activity"). Mr. Brattin's post therefore falls outside the legislative sphere and is not a "legislative act." Mr. Brattin is not entitled to legislative immunity for his post in this case.

Mr. Brattin argues that his post is "a call for stricter border security—a salient political issue impacting Defendant's constituents." (Doc. 23 at 20). He cites *Brown v. Griesenauer* and *O'Brien v. City of Greers Ferry* to argue that a state senator speaking to the federal government and calling for the establishment of a specific policy is at the heart of the "classic legislative function." (*Id.*). But neither *Brown* nor *O'Brien* make such a statement. *Brown*, 970 F.2d 431 (8th Cir. 2010); *O'Brien*, 873 F.2d 1115 (8th Cir. 1989). The *Brown* court evaluated whether a board of alderman's impeachment vote constituted legislative or adjudicative activity. *Brown*, 970 F.2d at 436-37. In ruling that such activity was adjudicative, the *Brown* court noted that "classic" legislative functions might include, among others, "enacting ordinances or establishing municipal policy." *Id.* at 437. *Brown* does not state that arguing or advocating for any particular policy is a "classic" legislative function, or even a legislative function at all. Further, Mr. Brattin's post in

this case does not enact any ordinance or establish any municipal policy, so *Brown* provides little support.

Nor does *O'Brien*. In that case, the Eighth Circuit held that a local legislator enjoyed qualified, not absolute, legislative immunity when acting in an executive capacity. 873 F.2d at 1119. In so holding, to emphasize that the legislative body at issue in the case was acting in an executive capacity, the court stated, "Normally, a legislative act is a formulation of policy governing future conduct for all or a class of the citizenry." *Id.* Mr. Brattin uses this to support his argument that "formulation of policy" through X posts is a legislative act. (Doc. 23 at 20). But *O'Brien* does not stand for this proposition, and other case law forecloses Mr. Brattin's argument that trying to influence another branch of government is a legislative act. *See McMillan*, 412 U.S. at 313 (legislators' conduct seeking to influence the Executive Branch "is not protected legislative activity"). As explained above, Mr. Brattin's post was not legislative in nature. Therefore, Mr. Brattin is not protected from Ms. Paul's claim by legislative immunity. This Court has subject matter jurisdiction over the claim against Mr. Brattin.

### III. Conclusion

For the reasons set forth above, the Court finds that Mr. Brattin's Motion to Dismiss should be denied. Accordingly,

IT IS, THEREFORE, ORDERED that Richard Ray Brattin's Motion to Dismiss the Complaint is DENIED, without prejudice, as set forth herein.

Dated this 7th day of October 2025, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*
Willie J. Epps, Jr.
Chief United States Magistrate Judge